IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JESSIE LEE WEBB, JR.,

             Plaintiff,

    v.

COLUMBIA COUNTY, *et al.*,

             Defendants.

No. 4:22-CV-00292

(Chief Judge Brann)

**MEMORANDUM OPINION**

**OCTOBER 5, 2022**

Plaintiff Jesse Lee Webb, Jr., a parolee currently under supervision, has brought this civil rights action against Columbia County, Pennsylvania, as well as the County's child services agency, and two employees of that agency. He alleges various claims arising from the agency's regulation of his custody of C.P., his minor child. Defendants now partially move to dismiss the action on several grounds. Their motion will be granted in part and denied in part for the following reasons.

## I.    BACKGROUND

Webb is an individual currently under the supervision of the Pennsylvania Board of Probation and Parole (the "Board").[1] Defendant Columbia County Children and Youth Services ("CCCYS") and its employees have regulated Webb's access to

---

[1] *See* Compl. Doc. 1 ¶¶ 13, 18, 19, 45, 46, 65; *Commonwealth v. Webb*, No. CP-19-CR-0000457-2017 (Columbia Cnty. Ct. of C.P. June 23, 2017).

C.P., requiring him to continually undergo drug testing and wear a "drug patch."[2] Although Webb passed all of his drug tests—and CCCYS never alleged that he was abusing drugs—CCCYS, at various times, "limited, removed, denied[,] and suspended" his custody of C.P. and maintained an "open case" against him.[3] Webb denies any allegations of misconduct.[4]

CCCYS has also reported its suspicion that Webb was abusing drugs to the Board, and in turn the Board prohibited him from "travel[ing] . . . out of state, including for purposes of his employment."[5] In addition to the Board, CCCYS has shared information about Webb with other unidentified "third parties"[6] At one point, police searched Webb's residence, and CCCYS employees accompanied the officers.[7]

Webb brings this civil rights action against CCCYS, Columbia County, April M. Miller (the director of CCCYS), and Brittany Boyer (an employee of CCCYS). He sues for violations of his constitutional rights through 42 U.S.C. § 1983, alleging that Miller and Boyer violated his substantive due process rights (Count I) and his right to travel (Count IV). He further alleges that the County and CCCYS maintained unconstitutional policies and customs for which they are liable under *Monell v.*

---

[2]   *Id.* ¶¶ 13-18.
[3]   *Id.* ¶¶ 14, 22.
[4]   *Id.* ¶ 23
[5]   *Id.* ¶ 19.
[6]   *Id.* ¶ 20.
[7]   *Id.* ¶ 21.

*Department of Social Services of City of New York*[8] (Count II). He sues Miller and Boyer for intentional infliction of emotional distress ("IIED") (Count III).[9] Lastly, Webb also brings a vicarious liability claim against the County and CCCYS premised on his IIED claim against Miller and Boyer (Count V).[10] He seeks compensatory and punitive damages, attorneys' fees, and costs.[11]

Defendants now move for dismissal of all Counts against CCCYS, Counts III through V against the County, and Counts III and IV against the Boyer and Miller.[12] They also seek to strike any demands for punitive damages from the County or CCCYS. However, they do not seek dismissal of Count I against Boyer and Miller and Count II against the County.

## II.   LEGAL STANDRD

### A.   Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v.*

---

[8]   436 U.S. 658 (1978).
[9]   *Id.* ¶¶ 43-65.
[10]   *Id.* ¶¶ 66-71.
[11]   *Id.* at 13. Webb also suggests in his briefing that he has a Fourth Amendment claim. *See* Plf's Opp. Br. at 9 ("Plaintiff claims that CCCYS employees violated his Fourth Amendment right against unreasonable seizure."). However, no such claim is raised in his Complaint. Therefore, the Court will not address any Fourth Amendment violations.
[12]   Defs' Partial Mot. to Dismiss Doc. 7 at 2-3.

*Twombly*[13] and *Ashcroft v. Iqbal*,[14] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[15]

The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[16]

### B.    Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

In addition to their arguments that Webb failed to state a claim on several Counts, Defendants raise the County and CCCYS's Eleventh Amendment immunity as a defense. "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction."[17] Accordingly, an Eleventh Amendment immunity defense "may properly be considered a motion to dismiss the

---

[13]   550 U.S. 544 (2007).

[14]   556 U.S. 662 (2009).

[15]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[16]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[17]   *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 694 n.2 (3d Cir.1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984).

complaint for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1)."[18]

A motion to dismiss under Rule 12(b)(1) attacks the Court's subject matter jurisdiction over the case before it. "At issue . . . is the court's 'very power to hear the case.'"[19] "[T]he person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation."[20]

## III.   ANALYSIS

Aside from Count V (IIED vicarious liability claim), Webb does not specify which Counts apply to which Defendants. However, some constitutional claims would fail as a matter of law if alleged against the County or CCCYS.[21] The Court infers that Defendant has alleged Counts I (substantive due process claim) and IV (right-to-travel claim) against Miller and Boyer for their individual actions as neither allege any unconstitutional policies or customs and he alleges Count II against the County and CCCYS as it identifies unconstitutional policies and customs. The Court will also infer that Count III encompasses only Miller and Boyer's liability for IIED and Count V addresses the vicarious liability of the County and CCCYS for IIED.

---

[18]   *Id.*

[19]   *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

[20]   *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

[21]   *See Monell*, 436 U.S. at 690 (explaining that under § 1983, a municipal defendant may only be sued for an act that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" in violation of the Constitution).

In support of their Partial Motion to Dismiss, Defendants assert that (1) Webb fails to state a claim for IIED, (2) the County and CCCYS cannot be held vicariously liable for their employees' alleged IIED, (3) Webb has no right to travel as he is a parolee, (4) the County and CCCYS are immune to Webb's § 1983 actions under the Eleventh Amendment, and (5) Webb cannot recover punitive damages from the County and CCCYS on his § 1983 actions.[22] The Court first discusses Counts III, IV, and V, as those Counts fail to state a claim as to any Defendant. The Court will then discuss the Defendants' remaining arguments on Counts I, II, and Webb's demand for punitive damages, which are only relevant to the County and CCCYS.

### A.    IIED Claim and Vicarious Liability (Counts III and V)

Defendants argue that Webb fails to state a claim for IIED as he has not satisfactorily alleged that Miller's and Boyer's actions were extreme or outrageous.[23]

"The elements of [IIED] are: (1) a person who by extreme and outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another."[24] "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have   presented   only   the   most egregious conduct."[25]

---

[22]   *Id.*; Defs' Br. Doc. 8 at 6-13.
[23]   Defs' Br. Doc. 8 at 11-13
[24]   *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Cmmw. Ct. 2010) (citing *Carson v. City of Philadelphia*, 574 A.2d 1184, 1187 (Pa. Cmmw. Ct. 1990).
[25]   *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).

Webb alleges that Boyer and Miller, as employees of CCCYS and by extension the County, have maintained an open case against him, forced him to wear a drug patch, falsely informed the Board that he was using drugs, improperly discussed his case with unidentified parties, limited his ability to see C.P., searched his residence without a warrant, and caused the Board to limit his ability to travel outside Pennsylvania.

It is clear that the Defendants' conduct does not rise to the level of extreme or outrageous.[26] Webb is a parolee on conditional release from incarceration following a criminal conviction. The conviction alone "justifies imposing extensive restrictions on the [his] liberty."[27] His rights to liberty and privacy must be balanced against Pennsylvania's "overwhelming interest" in protecting its public and rehabilitating him.[28] Monitoring a parolee for drug abuse and regulating the time he spends with his minor children are standard conditions of parole, and such practices would undoubtedly be in place if he was incarcerated or becomes incarcerated.[29] All of Defendants' actions are consistent with standard parole conditions and Webb has

---

[26] *See id.* (collecting cases in which conduct was outrageous or extreme).

[27] *Morrissey*, 408 U.S. at 483.

[28] *Id.*

[29] *See Samson v. California*, 547 U.S. 843, 850 (2006) ("[P]arole is more akin to imprisonment than probation is to imprisonment. '[It] is an established variation on imprisonment of convicted criminals. The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.'" (quoting *Morrissey*, 408 at 471 (ellipsis omitted))).

not alleged otherwise, beyond the conclusory assertion that Defendants "improperly exceed[ed] their authority."[30]

Even assuming that Defendants' conduct was outrageous, Webb has not sufficiently explained how they intentionally targeted him or behaved recklessly beyond conclusory allegations that Defendants are "impartial" and "racially biased."[31] Therefore, Count III (IIED claim) is dismissed. As Count V (IIED vicarious liability claim) is only a vicarious claim premised on Count III, it is also dismissed.

Defendants additionally contend that the County and CCCYS have not waived their state-law immunity from suit under 42 Pa. C.S. § 8542 to the vicarious claims in Count V. "It is well-settled that where a plaintiff has averred willful misconduct on the part of local agency employees, section 8542(a)(2) . . . bars recovery from the local agency because liability may be imposed on a local agency only for negligent acts."[32] Webb appears to concede this point.[33] Therefore, Count V will be dismissed with prejudice.

---

[30]   Compl. Doc. 1 ¶ 25.

[31]   *Id.* ¶¶ 32, 33.

[32]   *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmmw. Ct. 2014) (citing *City of Philadelphia v. Glim*, 613 A.2d 613, 617 (Pa. Cmmw. Ct. 1992)).

[33]   *See* Plf's Opp. Br. at 12 ("The Plaintiff's claim of 'vicarious liability' should be dismissed but the Plaintiff should be able to pursue its claims of *Monell* liability.").

Case 4:22-cv-00292-MWB   Document 11   Filed 10/05/22   Page 9 of 15

## B.    Right-to-Travel Claim (Count IV)

Webb next avers that Defendants communicated their suspicions of his drug use to the Board, resulting in the Board's prohibition of his out-of-state travel, in violation of his constitutional right to travel to other states.[34] Defendants submit that parolees have no such right and therefore Webb cannot sue for violation of it.[35]

Parolees "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [parole] restrictions.'"[36] Therefore, "despite the fundamental nature of th[e] right [to travel], there nonetheless are situations in which a State may prevent a citizen from leaving. Most obvious is the case in which a person has been convicted of a crime within a State."[37] Typically, violations of the right to travel are charged against the State or the United States, or the State or federal agency supervising the parolee.[38]

The Third Circuit recognizes that "[s]tandard conditions of probation include restrictions on a defendant's right to travel."[39] But those conditions must still be

---

[34]  *Id.* ¶¶ 18-19.

[35]  Def's Br. Doc. 8 at 9-11.

[36]  *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (quoting *Morrissey*, 408 U.S. at 480).

[37]  *Jones v. Helms*, 452 U.S. 412, 419 (1981).

[38]  *See, e.g.*, *Griffin*, 483 U.S. at 869 (claim against Wisconsin); *United States v. Warren*, 186 F.3d 358, 360 (3d Cir.1999) (claim against the United States); *Castaneira v. Potteiger*, 621 Fed. Appx. 116, 119 (3d Cir. 2015) (claim brought against Chairman of Pennsylvania Board of Probation and Parole); *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 195, 198 (3d Cir. 2008) (claim against Pennsylvania county parole considered a claim against the State, as it is part of statewide unified judicial system).

[39]  *Warren*, 186 F.3d at 366; *see also Castaneira*, 621 Fed. Appx. at 119 ("Restrictions to a particular community or state, as well as restrictions on travel or movement, are standard conditions of parole." (citing *Morrissey*, 408 U.S. at 478)).

9

"reasonably necessary to fulfill the purposes of probation."[40] This is consistent with the view that parolees have a heavily qualified right to travel rather than no right at all.[41]

Assuming he has a qualified right to travel, Webb has not satisfactorily shown that Defendants violated it. It may be the case that the Board or the agency responsible for Columbia County parolees violated Webb's right to travel by prohibiting him from travelling out-of-state. But Webb has not sued the Board or the Columbia County agency responsible for his supervision. Nor has he alleged that Defendants had any control or influence over the Board's or the county agency's actions. His allegation that the Board acted as a result of Defendants' communications to the Board about his drug use is conclusory at best.

Even if Defendants had sufficient influence to cause the Board to restrict Webb's out-of-state travel, the restriction is justified. The Court notes that Webb

---

[40] *Warren,* 186 F.3d at 366 (citing 18 U.S.C. § 3563(b)). Although the Third Circuit cites federal statutory law in support of its conclusion, Pennsylvania law is in general accord. *Compare* 18 U.S.C. § 3553(b) (allowing courts to impose "further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2)," which include rehabilitation and the need to protect the public), *with* 61 Pa. C.S. § 6132(a)(3) (requiring that "[c]onditions of supervision must be based on the risk presented by and the rehabilitative needs of the offender.").

[41] *See Castaneira*, 621 Fed. Appx. at 119 (noting that parolee "d[id] not enjoy an absolute right to travel"). However, several of the Courts of Appeals have concluded that parolees enjoy no right to travel at all. *See Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir.2 003) ("Like prisoners, . . . parolees . . . have no right to control where they live in the United States; the right to travel is extinguished for the entire balance of their sentences."); *Bagley v. Harvey*, 718 F.2d 921, 924 (9th Cir. 1983) ("[A]n individual's constitutional right to travel, having been legally extinguished by a valid conviction followed by imprisonment, is not revived by the change in status from prisoner to parolee.").

was convicted of manufacture or possession of controlled substances and conspiracy to flee apprehension, among other crimes.[42] His 2015 flight conviction alone serves to show that the Board's restriction on his out-of-state travel not violate his limited right to travel.[43] Therefore, Count IV is dismissed.

### C.   *Monell* Claim Against CCCYS (Count II)

Webb brings several constitutional claims both against individual employees of CCCYS and against the agency itself, as well as the County. Defendants only move to dismiss claims against CCCYS. However, it is unclear if Webb even alleges a claim against CCCYS. In his briefing, Webb first explains that "[his] lawsuit under the *Monell* theory is not suing [CCCYS], as it had committed the unconstitutional act—instead [he] is suing Columbia County directly for implementing policies or customs that ultimately caused the infringing actions."[44] He then later states that "[he] will show that CCCYS has a *custom* of failing to remedy or address complaints lodged against its employees, and that [he] suffered constitutional injuries as a result."[45]

---

[42]   *See Webb*, No. CP-19-CR-0000457-2017 (describing Webb's criminal history).

[43]   *See Castaneira v. Potteiger*, 2014 WL 4716621, at **5-6 (M.D. Pa. Sept. 22, 2014) (Munley, J.) (concluding that parole condition precluding a parolee convicted of child sex crimes from living near schools did not infringe upon parolee's right to travel), *aff'd*, 621 Fed. Appx. 116.

[44]   Plf's Opp. Br. Doc. 9 at 9. In his Complaint, Webb does not allege that he complained to CCCYS regarding its employees' conduct or that it failed to address his concerns. *See* Compl. Doc. 1.

[45]   *Id.* at 11 (emphasis added). Should he amend his pleadings, the Court suggests that Webb specify which Counts of the Complaint apply to which Defendants.

In any event, the Court will assume that Count II (*Monell* claim) applies to both the County and CCCYS. Defendants argue that CCCYS is immune from Webb's constitutional claims by virtue of the Eleventh Amendment. Webb argues that CCCYS is a subdivision of Pennsylvania that is not entitled to immunity.

Immunity under the Eleventh Amendment protects both states and state agencies "as long as the state is the real party in interest."[46] But "a county does not occupy the same position as a State for purposes of the Eleventh Amendment."[47] Nor does a county agency or any other subdivision unless it is essentially an arm of the state.[48]

To determine whether the immunity applies, the Third Circuit developed a test in *Fitchik v. New Jersey Transit Rail Operations*: "(1) the source of the money that would pay for the judgment; (2) the status of the entity under state law; and (3) the entity's degree of autonomy."[49] "[E]ach of the factors is considered 'co-equal . . . .'"[50] At this early stage of litigation, application of the factors is unclear. However, they appear to suggest the conclusion that CCCYS is not immune.

---

[46]  *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc).

[47]  *Edelman v. Jordan*, 415 U.S. 651, 668 n.12 (1974).

[48]  *See Haybarger*, 551 F.3d at 198 ("Pennsylvania's judicial districts, including their [county] probation and parole departments, are entitled to Eleventh Amendment immunity" because "[t]he Commonwealth vests judicial power in a unified judicial system and all courts and agencies of the UJS are part of the Commonwealth government rather than local entities." (citations omitted)).

[49]  *Haybarger*, 551 F.3d at 198 (citing *Fitchik*, 873 F.2d at 659).

[50]  *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018) (quoting *Cooper v. S.E. PA Transp. Auth.*, 548 F.3d 296, 302 (3d Cir. 2008)).

The first factor includes three subordinate questions: "whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts"[51]

The limited record before the Court does not clearly establish how CCCYS is funded or whether Pennsylvania would satisfy any judgments against it. The Court notes only the absence of any statute guaranteeing that the state would guarantee the debts of its counties or their agencies. This mildly disfavors immunity.

The second factor includes four subordinate questions: "how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation."[52]

First, it does not appear that CCCYS is essentially an arm of the state. Unlike county probation offices—which are part of Pennsylvania's Unified Judicial System—CCCYS appears to be a division of Columbia County rather than the

---

[51]   *Fitchik*, 873 F.2d at 659.
[52]   *Id.*

13

Commonwealth of Pennsylvania.[53] And in Pennsylvania, counties are separately incorporated.[54]

Second, despite Defendants' assertion that CCCYS is not a distinct legal entity capable of being sued, the Third Circuit has noted that "Pennsylvania county offices of children and youth services are treated as municipalities for purposes of *Monell*,"[55] and therefore can be sued, as evidenced by the fact that the Third Circuit has permitted similar claims to proceed against those offices[56]. Therefore, this factor strongly disfavors immunity.

Third, CCCYS appears to have a substantial amount of autonomy given the County's entirely separate incorporation. Moreover, CCCYS is the "sole civil agency responsible for receiving and investigating all reports of child abuse . . . ."[57] Accordingly, this factor also disfavors immunity.

In sum, the Court concludes that on the record before it, CCCYS has no Eleventh Amendment immunity. Therefore, Defendants' Motion to Dismiss is denied with respect to Count II against CCCYS.

---

[53]  *See* 16 Pa. C.S. § 2168 (assigning county commissioners the "duty" to provide child welfare services); 62 Pa. C.S. § 2305 ("The local authorities of any institution district shall have the power, and for the purpose of protecting and promoting the welfare of children and youth, it shall be their duty to provide those child welfare services . . . .").

[54]  16 Pa. C.S. § 203 ("The corporate power of each county shall be vested in a board of county commissioners.").

[55]  *Hatfield v. Berube*, 714 Fed. Appx. 99, 103 (3d Cir. 2017) (citing *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013)).

[56]  *See Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1125-27 (3d Cir. 1997) (reversing grant of summary judgment on plaintiffs' substantive due process claim against child services agency).

[57]  23 Pa. C.S. § 6362(a).

### D.     Claims for Punitive Damages

Defendants last challenge Webb's demand for punitive damages from the County and CCCYS, arguing that as municipal entities, they are not responsible for punitive damages. Webb concedes this point.[58] The Supreme Court of the United States has held that "municipalit[ies] [are] immune from punitive damages under 42 U.S.C. § 1983."[59] Therefore, to the extent that Webb seeks punitive damages from the County or CCCYS on Count II, those demands are stricken.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[58]   Plf's Opp. Br. Doc. 9 at 16 ("The Plaintiff concurs that punitive damages cannot be subjected on Columbia County or its agency, CCCYS.").

[59]   *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).