# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSE LEE WEBB, JR., | No. 4:22-CV-00292 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| COLUMBIA COUNTY, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### DECEMBER 27, 2023

This case has gone from dubious to frivolous due to counsel's failure to create a factual record. As a result, no dispute of fact exists as to many of this Plaintiff's most critical allegations, and this case can be resolved with minimal discussion of its merits.

## I.   BACKGROUND

In February 2022, Jesse Webb filed a five-count complaint against Columbia County, Columbia County Children and Youth Services ("CYS"), April M. Miller, and Brittany Boyer (collectively, "Defendants").[1] In October 2022, this Court granted Defendants' partial motion to dismiss as to three counts of the complaint.[2] Webb then filed an amended complaint in October 2022, and Defendants filed an

---

[1]   Doc. 1.
[2]   Doc. 12.

answer.[3] Webb's amended complaint alleges two causes of action against all Defendants.[4] Count I seeks damages for a "State Created Harm/Substantive Due Process Violation" under 42 U.S.C. § 1983.[5] Count II seeks damages for "Unconstitutional Policies and Customs" under 42 U.S.C. § 1983.[6] Both claims allege an unspecified Fourteenth Amendment violation.[7]

Discovery concluded in July 2023.[8] Defendants then moved for summary judgment and filed a Statement of Facts ("SOF") in compliance with Local Rule 56.1 in September 2023.[9] Webb filed an Answer to the Statement of Facts ("ASOF") in October 2023.[10]

The motion is now ripe for disposition; for the reasons below, it is granted.

## II.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence

---

[3]   Docs. 13, 14.
[4]   Doc. 13.
[5]   *Id.* at 8.
[6]   *Id.* at 10.
[7]   *Id.* ¶¶53, 61.
[8]   Doc. 21.
[9]   Docs. 22, 24.
[10]   Doc. 26.
[11]   Fed. R. Civ. P. 56(a).

exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[12] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[13] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[14]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[15] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[16] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[17] Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[18]

---

[12] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).

[13] *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).

[14] *Id.*

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).

[16] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).

[17] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

[18] Fed. R. Civ. P. 56(c)(3).

### B.     Materials in the Record

Before moving to the undisputed facts, however, the Court must clarify which materials it may rely upon at summary judgment. Webb's reliance upon his amended complaint is misplaced at the summary judgment stage, and because of his noncompliance with Rule 56.1, the allegations in Defendants' SOF are deemed admitted. Webb creates no record himself, and his objections to Miller and Boyer's affidavits are meritless. The Court therefore relies upon the facts in Defendants' SOF along with the documents provided by Defendants, which include Webb's Deposition, Miller and Boyer's Affidavits, and orders issued by the state court overseeing Webb's child custody case.

### 1.     Webb's Reliance on the Amended Complaint

Webb appears to largely rely on his amended complaint to craft his ASOF, as many of his denials seem to mirror its allegations.[19] He also relies on his amended complaint to assert facts in his briefings.[20] But this document cannot create a genuine issue of fact. "A plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case."[21]

---

[19]   ASOF, Doc. 26 ¶¶20, 25, 27, 30, 33, 35, 37.

[20]   *See* Doc. 27 at 4, 10-12, 15, 19, 21.

[21]   *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). *See also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2721 (4th ed. 2023) ("The importance of going beyond the pleadings on a summary-judgment motion is emphasized by the

## 2.    Local Rule 56.1

Defendants' Reply Brief solely raises the issue of Webb's noncompliance with Middle District of Pennsylvania Local Rule 56.1.[22] Middle District of Pennsylvania Local Rule 56.1 governs summary judgment and is designed to "structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration of the motion."[23] The Rule provides:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.[24]

---

requirement in 56(c)(1) that a party either asserting that a fact cannot be or that it is genuinely disputed "must" support that assertion by citation to materials in the record . . . . As a consequence, the formal issues framed by the pleadings are not controlling on a motion for summary judgment; the court must consider the issues presented by the other materials offered by the parties on the motion to determine whether the Rule 56 request should be granted.").

[22]   Doc. 28.

[23]   *Savidge v. Donahoe*, No. 3:08-CV-2123, 2011 U.S. Dist. LEXIS 89894, at *5 (M.D. Pa. Aug. 12, 2011) (quoting *Hartshorn v. Throop Borough*, No. 3:07-CV-01333, 2009 U.S. Dist. LEXIS 22372, at *3 (M.D. Pa. Mar. 19, 2009)).

[24]   M.D. Pa. L.R. 56.1.

It is obvious that Webb failed to comply with Local Rule 56.1, as his ASOF contains no record citations at all. As noted, Webb accompanies some of his denials with explanations which seem to mirror parts of his amended complaint.[25] Other denials state that "the Complaint and other documents speak for themselves."[26] And still other denials refer to "information, reports and recommendations of the Defendant," or other vague collections of documents, without citation.[27]

"[T]he proper sanction for violating Rule 56.1 is within the district court's discretion."[28]  Where nonmovants fail to support denials with record citations, a common sanction is to deem these allegations admitted.[29] Indeed, the failure to point to support in the record itself is often a tacit admission that the record does not create a dispute of material fact. That appears to be the case here. Webb's vague denials reflect no genuine effort to point to specific facts in the record creating an issue of material fact. Nor do Webb's briefings contain citations to any record materials, which might otherwise assist the Court in locating the basis for Webb's denials in the record notwithstanding Webb's noncompliance.

By way of example, Webb's ASOF maintains that "the Court's orders were all based upon the information, reports and recommendations of the Defendant CYS

---

[25]  ASOF, Doc. 26 ¶¶20, 25, 27, 30, 33, 35, 37.

[26]  *Id.* ¶¶ 3.

[27]  *Id.* ¶¶15, 16, 17, 19, 30.

[28]  *Hickley v. Merritt-Scully*, No. 4:18-cv-01793, 2021 U.S. Dist. LEXIS 46550, at *2 (M.D. Pa. Mar. 12, 2021) (Schwab, M.J.) (citing *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018)).

[29]  *See Smith v. Addy*, 343 F.App'x 806, 808 (3d Cir. 2009).

and its named and unnamed individual officers, agents and representatives."[30] Yet, Webb fails to clarify what information, reports and recommendations CYS provided to the state court. So even if this Court forgave Webb's noncompliance with Rule 56.1, there is no way to locate which information in the record supports his factual claims.

This is illustrative of the larger issue that Webb has not created any record to support his denials. According to Defendants, Webb's counsel never deposed him, or took any other deposition.[31] And despite the exchange of written discovery, Webb provides no such documents. The complete record available to the Court consists of what is provided by the Defendants. So if this Court did not deem the SOF admitted, the current record would have nearly the same effect.

### 3. Defendants' Affidavits

In his ASOF, Webb objects to assertions made in Miller and Boyer's affidavits several times due to their purportedly "self-serving" nature. The Court recognizes that "because an affiant is not subject to cross-examination, the judge deciding the motion must exercise considerable care in assigning weight to the affidavits

---

[30] ASOF, Doc. 26 ¶15.

[31] Doc. 28 at 1, 7 ("The discovery deadline was July 3, 2023. The parties exchanged written discovery, but the only deposition taken was the defense deposition of the plaintiff . . . . Given that only Webb's deposition was taken in discovery, it is not surprising that Webb has no statements from the named defendants or from his state parole officer to create an issue of material fact that would justify a jury trial."); Doc. 24-1 at 17 (following Attorney Geiger's deposition of Webb, Attorney Katsock states that he has no questions to ask).

presented."[32] Yet, while "more reliable forms of proof should be used in place of or to supplement an affidavit when that is possible and appropriate,"[33] a court is obliged to take account of the entire setting of the case on a Rule 56 motion, including affidavits prepared for the motion that meet the standard prescribed in Federal Rule of Civil Procedure 56(c)(4).[34] This Rule simply requires that the averments in the affidavit are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[35]

So long as an otherwise admissible summary judgment affidavit complies with these requirements, and the record indicates no specific reason to doubt its credibility,[36] this Court cannot refuse to credit that affidavit solely because it is "self-

---

[32]  10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (4th ed. 2023).

[33]  *Id.*

[34]  10A Wright & Miller § 2721; *U.S. v. U.S. Gypsum Co.*, 340 U.S. 76 (1950); *Manetas v. Int'l Petroleum Carriers, Inc.*, 541 F.2d 48 (3d Cir. 1976).

[35]  56(c)(4).

[36]  Of course, an affidavit may be excluded under the "sham-affidavit doctrine" "[w]hen a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 392 (3d Cir. 2017). *See also Williams v. Pa. State Univ.*, No. 4:20-CV-00298, 2023 U.S. Dist. LEXIS 183074, at *36 & n.219 (M.D. Pa. Oct. 11, 2023) (excluding portions of self-serving deposition testimony, as some portions baselessly disputed the authenticity of documents, while others were not sufficient for a rational factfinder to credit Plaintiff's testimony when juxtaposed with other evidence); *Johnson v. MetLife Bank, N.A.*, 883 F.Supp. 2d 542, 549 (E.D. Pa. 2012) ("[T]he issue is not whether Plaintiff has relied solely on his own testimony to challenge the Motions, but whether Plaintiff's testimony . . . is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature.").

serving."[37] "[T]he testimony of a litigant will almost always be self-serving since few litigants will knowingly volunteer statements that are prejudicial to their case. However, that has never meant that a litigant's evidence must be categorically rejected by the fact finder."[38] Webb's boilerplate denials of Miller and Boyer's affidavits because they are "self-serving" are therefore ineffective.[39]

## C.    Undisputed Facts

With this analysis setting the framework for the Court's review, I now turn to the facts established by the record.

Jesse Webb is a resident of Columbia County and the natural parent of C.P.[40] Around 2017, Webb was engaged in the sale of crack cocaine and heroin and stored these drugs in his home.[41] After pleading guilty to these felonies, Webb was incarcerated for three years.[42] In late 2017, while Webb was incarcerated, his ex-wife Victoria Perry gave birth to C.P.[43] CYS first became involved with C.P. after receiving a referral from a pediatrician at Geisinger.[44] In early 2018, Perry was

---

[37]  *See, e.g.*, *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496 (7th Cir. 2004) (reversing trial court and holding that discounting "self-serving" affidavit was abuse of discretion).

[38]  *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 321 n.2 (3d Cir. 2012).

[39]  Doc. 25 ¶¶10-13, 18, 23, 26, 28, 31-32, 34, 38-41 (containing the following language: "The Plaintiff objects to the consideration of the Defendants' submission of self-serving declarations and/or affidavits by the Defendants off alleged facts, which are both unknown to the Plaintiff and disputed.").

[40]  Amended Complaint, Doc. 13 ¶ 3; Answer, Doc. 14 ¶3.

[41]  SOF, Doc. 24 ¶5; ASOF, Doc. 26 ¶5.

[42]  SOF, Doc. 24 ¶4; ASOF, Doc. 26 ¶4.

[43]  SOF, Doc. 24 ¶9; ASOF, Doc. 26 ¶9.

[44]  SOF, Doc. 24 ¶11; Doc. 24-1 at 28, Miller Affidavit ¶8.

deemed unfit to care for C.P., and CYS assumed custody over the child until April 2021, when it granted custody to Webb.[45]

When Webb was released from prison on January 9, 2020, C.P. was two years old.[46] Webb then petitioned the Columbia County Court of Common Pleas for custody of C.P.[47] The state court issued Orders arranging a plan for Webb's custody under CYS' supervision.[48] Pursuant to this arrangement, CYS conducted investigations and made reports to other governmental agencies about Webb, including the Pennsylvania Board of Probation and Parole.[49] Webb chiefly complains of two conditions imposed upon him; one concerning drug tests, and one concerning travel restrictions.

### 1. Drug Tests

The state court's orders authorized CYS to conduct random drug screens on Webb, and required that Webb "inform [CYS] of any change in address or phone number within 24 hours."[50] CYS also periodically asked Webb to wear drug patches, which was also authorized by the state court's supervision order.[51] While Webb

---

[45] Doc. 24-1 at 35-36, 39-40 (mother's drug use found to pose threat to child), 42-44 (order temporarily placing child within CYS' custody), 47, 51, 55, 59, 64, 68, 72, 76, 80 (orders continuing CYS' custody of child), 84 (order returning child to Webb's custody).

[46] SOF, Doc. 24 ¶¶6, 14; ASOF, Doc. 26 ¶¶6, 14.

[47] SOF, Doc. 24 ¶15; ASOF, Doc. 26 ¶15.

[48] *Id.*

[49] Amended Complaint, Doc. 13 ¶13; Answer, Doc. 14 ¶13.

[50] SOF, Doc. 24 ¶17; ASOF, Doc. 24 ¶17; Doc. 24-1 at 50.

[51] SOF, Doc. 24 ¶19; ASOF, Doc. 24 ¶19.

testified that CYS "made him" wear the drug patches, he never refused to wear them when asked.[52]

The state court orders did not require CYS to identify any reason for a test, but CYS, according to Miller, had received confidential reports that Webb may have been using drugs.[53] Webb denies the existence of any such report with more generic, unsubstantiated, boilerplate denials,[54] but again, nothing in the record supports these denials.

Webb passed every drug test, yet CYS maintained an open case as to C.P. until 2023.[55] In addition to CYS, the Board of Probation also conducted random drug tests on Webb.[56] As of Webb's deposition, the Board of Probation continued to require Webb to take drug tests.[57] Webb believes that an allegedly stricter level of supervision imposed on him by CYS caseworkers was due to his race.[58]

---

[52] SOF, Doc. 24 ¶20; Doc. 24-1 at 14. In his ASOF, Webb maintains that his consent to wear the patch was invalid, as he "fear[ed] that such refusal would be used as another pretext to deny his custody and/or visitation with [C.P.]" ASOF, Doc. 26 ¶20. But this is not reflected in Webb's testimony, so this allegation is unsupported by the record. However, Webb's testimony does establish that he believed wearing the patch to be mandatory.

[53] SOF, Doc. 24 ¶18; Doc. 24-1 at 29, Miller Affidavit ¶18.

[54] ASOF, Doc. 26 ¶18.

[55] Amended Complaint, Doc. 13 ¶16; Answer, Doc. 14 ¶16; Doc. 24-1 at 11-12, Webb Deposition at 38, 42. This excludes a positive drug test which was excused due to a fentanyl prescription. *Id.*

[56] SOF, Doc. 24 ¶21; ASOF, Doc. 26 ¶21.

[57] Doc. 24-1 at 16, Webb Deposition at 60.

[58] SOF, Doc. 24 ¶¶ 27-29; Doc. 24-1 at 8, Webb Deposition at 29.

### 2.    Travel Restrictions

The state court also required Webb to notify CYS of any change of address within 24 hours.[59] Webb owed the same obligation to his probation officer.[60] Since Webb's release from prison in January 2020, he only left Pennsylvania on one occasion to visit family in North Carolina for about three days.[61] According to April Miller's affidavit, CYS never restricted Webb's travel; it only insisted that Webb provide it with an address for his North Carolina trip when he left the state.[62] Miller avers that CYS later learned that the address Webb provided did not exist.[63]

### 3.    Searches

Webb also complains that CYS conducted unlawful searches of his possessions. Although he claimed in his amended complaint that an unidentified CYS caseworker and a police officer had searched his house,[64] Webb clarified in his deposition that the house across the street from his was the house searched.[65] In his deposition, Webb seems unsure of who was involved in the search.[66] Miller and Boyer both state in their affidavits that they were not involved.[67]

---

[59]   SOF, Doc. 24 ¶36; ASOF, Doc. 26 ¶36.
[60]   Doc. 24-1 at 17, Webb Deposition at 63.
[61]   *Id.* at 11, Webb Deposition at 41.
[62]   Doc. 24-1 ¶35; Doc. 24-1 at 31, Miller Affidavit ¶28.
[63]   *Id.*
[64]   SOF, Doc. 24 ¶24; ASOF, Doc. 26 ¶24; Amended Complaint, Doc. 13 ¶21.
[65]   SOF, Doc. 24 ¶25; ASOF, Doc. 26 ¶25; Doc. 24-1 at 10, Webb Deposition at 34-36.
[66]   Webb first indicates that Boyer may have been involved, then indicates that he cannot recall who was involved. Doc. 24-1 at 10, 14, Webb Deposition at 34-36 ("Brittany, yes. She came there to the house that wasn't my residence,"), 52 (Q. Okay. Which Children and Youth workers? A. I don't recall the names at that time.").
[67]   SOF, Doc. 24 ¶26; Doc. 24-1 at 30, Miller Affidavit ¶26; Doc. 24-1 at 32, Boyer Affidavit ¶4.

### 4.    Individual Defendants

In addition to CYS, Webb brings suit against two individual defendants. April Miller was the Director of CYS, while Brittany Boyer was a caseworker for CYS.[68]

Were the Court to consider Webb's deposition, it would do little to flesh out his claims against Miller. Webb believes that Miller may have testified in some of his court proceedings, but he is not sure, and he does not recall what she testified about, which proceedings she testified at, or when.[69] Webb testifies that at some point, he reached out to talk to Miller to discuss his case.[70] But he cannot recall if he ever personally spoke to Miller.[71] Webb also states that while he has no personal knowledge that Miller required him to wear a drug patch, two unidentified CYS employees, Sarah and Felicia, told him that the drug patch requirement "came from April Miller."[72] He first testified that Miller is racist,[73] then testified that he does not personally know whether she is racist.[74]

Boyer had previously been involved in dependency cases involving two of Webb's other children.[75] Boyer states in her affidavit that she was not involved in C.P.'s case, however, and nothing in the record creates a dispute as to this fact.[76]

---

[68]    SOF, Doc. 24 ¶¶1-3; ASOF, Doc. 26 ¶¶1-2.
[69]    Doc. 24-1 at 15-16, Webb Deposition at 57-58.
[70]    *Id.* at 6, Webb Deposition at 19.
[71]    *Id.*, Webb Deposition at 20.
[72]    *Id.*
[73]    *Id.*, Webb Deposition at 20-21.
[74]    *Id.*, Webb Deposition at 21.
[75]    SOF, Doc. 24 ¶10; Doc. 24-1 at 32, Boyer Affidavit ¶2.
[76]    *Id.*

Webb does not even testify that Boyer was involved in C.P.'s case. When asked about Boyer, Webb initially testified that he "can't recall her at the moment."[77] He subsequently explained that he was suing her for "violating [his] rights," which included performing drug tests—but he does not indicate that *Boyer* performed those drug tests.[78] Webb did not appear to recall whether Boyer told him anything he considered to be racist, yet maintained: "[in] my personal opinion, all of it had to be with me just being black."[79] Nor could Webb recall whether Boyer ever testified at any of his court hearings.[80]

---

[77]   Doc. 24-1 at 9, Webb Deposition at 33.
[78]   *Id.* at 10, Webb Deposition at 35.
[79]   *Id.* at 9-10, Webb Deposition at 33-34.
[80]   *Id.* at 16, Webb Deposition at 58.

### 5.     CYS Policies and Training

The parties agree that all of Miller and Boyer's actions were consistent with CYS policies.[81] But Webb is not aware of any other people who were discriminated against by CYS because they were black.[82] He does not know what kind of training caseworkers generally, or Boyer specifically, received at CYS.[83] And he states that while he has read some of CYS and Columbia County's policies on the Internet, he did not save them, nor does he recall them.[84] Undisputed by any of this testimony, Miller avers that CYS caseworkers receive regular training on Pennsylvania child protective services laws, and their work is reviewed by supervisors to ensure compliance with CPS laws.[85]

### D.     Analysis

One word describes Webb's case: vague. As it has developed, this is principally a case decided on the summary judgment standard itself. Given the undisputed facts, resolving the merits requires modest analysis.

### 1.     Claims against CYS and Columbia County

Section 1983 provides a procedural vehicle for private plaintiffs to enforce the Constitution when they suffer violations under color of state law.[86] The first hurdle

---

[81]   SOF, Doc. 24 ¶42; ASOF, Doc. 26 ¶42.
[82]   *Id.* at 17, Webb Deposition at 64.
[83]   *Id.* at 11, Webb Deposition at 40-41.
[84]   Doc. 24-1 at 16-17, Webb Deposition at 61-62.
[85]   Doc. 24-1 at 30, Miller Affidavit ¶21.
[86]   *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).

to a Section 1983 claim against a municipality is to show that "the constitutional deprivation was caused by a person acting under state law."[87] As set out in *Monell v. New York Department of Social Services*, a municipal body is a "person" who can be liable under Section 1983.[88] But a municipality can only be liable for its own actions; it cannot be vicariously liable for the actions of its employees. A municipal body acts through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[89] This includes unconstitutional practices which are "so permanent and well settled as to constitute a custom or usage with the force of law,"[90] as well as acts by the municipal body itself,[91] and a failure to train demonstrating "deliberate indifference" towards the constitutional violations caused by its employees.[92]

That standard makes disposing of Webb's claims quite simple—since the record does not reflect any policy at all. Webb states in his brief in opposition to summary judgment that CYS' inadequate supervision enables constitutional violations through a "code of silence," creating the practice of "conduct[ing] a minimal investigation designed to exonerate the caseworker involved [in

---

[87]   *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).
[88]   436 U.S. 658, 690 (1978).
[89]   *Id.*
[90]   *City of St. Louis v. Prapotnik*, 485 U.S. 112, 117 (1988).
[91]   *See Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (quoting *Bielvicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).
[92]   *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997).

constitutional violations] rather than discover the true facts of the incident."[93] This conclusory allegation is completely bereft of any record support or citation and can be dismissed out-of-hand. Nothing in the record supports any pattern of violations, and nothing in the record reflects upon CYS policy at all. At most a few vague allegations relate to CYS caseworkers' handling of Webb's case. One case is not a policy, a practice, or a pattern of violations.

Webb explains the failure to cite any evidence by stating: "[t]he moving defendants are in exclusive control and possession of all records, courses and documents concerning the training of CYS caseworkers when filing handling child custody and dependency matters. The only thing the public, and the plaintiff, know is what is provided to them by the government in discovery."[94] But Webb has not stated that he requested such records but was unable to obtain them—his argument is solely that these records are in the defendants' control. The Court does not follow this argument. Discovery is the mechanism through which counsel obtain such documents. Attorneys make discovery requests to build a record. Their opponents do not have a duty to provide unrequested documents. Webb seems to confuse a motion to dismiss, which is judged based on the allegations in a complaint, with a motion for summary judgment, for which discovery is complete.

---

[93]  Doc. 27 at 11.
[94]  *Id.* at 12.

## 2.    Claims against Miller and Boyer

In order to be liable for a Section 1983 violation, an individual defendant must have been personally involved in the deprivation of the plaintiff's rights.[95] Webb's claims against Miller and Boyer are much like his claims against CYS and Columbia County; the record does not tie them to the alleged conduct.

Boyer's statement that she was not even involved in Webb's case is unrebutted. Even if the Court found a dispute of fact over Boyer's involvement in the supposed illegal search, it would be irrelevant to showing her personal involvement in any restriction upon Webb's substantive due process rights.[96]

Miller's involvement in this matter is also minimal. For purposes of Section 1983, a supervisor's personal involvement may be shown by establishing either that they (1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or (2) "if he or she participated in violating the plaintiff's rights, directed

---

[95]  *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 194 (3d Cir. 1997).

[96]  This conduct could only support liability if it actually caused the alleged constitutional violation, and the record does not substantiate how this search restricted Webb's parental or travel rights. Even given such causation, Webb's case would be suspect. *See Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) ("Because explicit textual provisions of constitutional protection [the Fourth and Fifth Amendments] cover the areas of conduct challenged by the plaintiffs, substantive due process provides the plaintiffs no additional relief."); *Ramirez v. Butte-Silver Bow Cnty*, 298 F.3d 1022, 1029 (9th Cir. 2022) (quoting *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)) ("[P]laintiffs cannot 'double up' constitutional claims . . . [w]here a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also assess the claim under another, 'more generalized,' source.").

others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct."[97]

Webb's allegations do not establish Miller's involvement in the decisions to require his drug testing or ensure that he notify CYS of any change of residence. "It is not sufficient . . . for a plaintiff to allege that an individual had constructive knowledge of his or her subordinates' unconstitutional conduct simply by virtue of his or her supervisory position,"[98] or to allege liability via respondeat superior.[99] Nothing in the record creates any dispute as to Miller's allegation that she was not personally involved in Webb's case.[100]

### 3.    Substantive Due Process

It is clear that no official act, policy, or practice ties CYS or Columbia County to the alleged acts, and Webb has failed to create an issue of fact as to Boyer and Miller's personal involvement. Nevertheless, the Court will briefly explain that no constitutional violation has been alleged either.

---

[97] *A.M. ex rel. J.N.K. v. Luzerne Cnty Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

[98] *McQueen v. Phila. Hous. Auth.*, No. 02-8941, 2003 U.S. Dist. LEXIS 19844, at *10 (E.D. Pa. Sept. 26, 2003) (citing *Regan v. Twp. of Lower Merion*, No.98-2945, 1999 U.S. Dist. LEXIS 17219, at *15 (E.D. Pa. Oct. 28, 1999)); *see also Robinson*, 120 F.3d at 1295 (although the plaintiff complained to assistant chief of police about harassment, there was no evidence that chief of police had actual knowledge of harassment).

[99] *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 368 (1976).

[100] *See* Doc. 24-1 at 2, Miller Affidavit ¶3. The only thing that comes close is Webb's allegation that Miller *might* have testified in a court hearing, or his allegation that the drug patch requirement "came from Miller," and Webb cites to neither of these deposition statements in his ASOF. As the discussion below indicates, however, even this testimony could not prevent summary judgment because no constitutional violation has been alleged.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[101] This language incorporates both "procedural" and "substantive" components.[102] The Due Process Clause's substantive component includes both the liberty interest in familial integrity, and a qualified right to travel.

As to familial integrity, the United States Court of Appeals for the Third Circuit has recognized "the constitutionally protected liberty interests that parents have in the custody, care and management of their children."[103] But because courts "must balance the fundamental liberty interests of the family unit with the compelling interests of the state in protecting children from abuse," this right is "not absolute."[104] "A child welfare agency abridges an individual's substantive due process rights when its actions 'exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed "shocks the conscience."'"[105] Negligence is insufficient to support such a claim.[106] A violation

---

[101]  U.S. Const. amend. xiv.
[102]  *Cnty of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1988).
[103]  *Croft v. Westmoreland Cnty Children & Youth Servs.*, 103 F.3d 1123, 1125.
[104]  *Id.* at 1125.
[105]  *Mulholland v. Gov't Cnty of Berks*, 706 F.3d 227, 241 (3d Cir. 2013) (quoting *Miller v. City of Phila.*, 174 F.3d 368, 375-76 (3d Cir. 1999)).
[106]  *See Daniels v. Williams*, 474 U.S. 327, 332-34 (1986).

only results "if the child is removed without 'an objectively reasonable suspicion of abuse,' based on the information available at the time."[107]

Webb's briefings assert the following argument to connect CYS' drug tests to an interference with his parental rights:

> Due to the actions of the Defendants, Mr. Webb has stated of-record that he has been prejudiced in legal and public forums and forced to overcome erroneous credibility issues in the eyes of the courts and the community. This error has directly caused and laid the very foundation for minor child's separation from his Father under false pretenses. He testified that he has been subjected to an enormous amount of stress and anxiety, due to false drug allegations and the illegal search. In the same way, it has affected by his reputation among certain members of the community.[108]

Webb's citation to non-existent record materials and testimony is concerning, as is his reference to facts never produced to this Court. Webb's alleged prejudice in legal forums, credibility issues in courts and the community, separation from C.P. under false pretenses, and resulting stress and anxiety cannot be found anywhere in the record, and therefore there is no need to reach the questionable merits of whether such a scenario even could raise a substantive due process claim.[109]

---

[107] *Id.* at 241 (quoting *Croft*, 103 F.3d at 1126).

[108] Doc. 27 at 8.

[109] Causing a parent's custody of his child to be revoked through fabricated claims has been recognized to constitute "an abusive, malicious, and oppressive use of governmental power" that shocks the conscience and gives rise to a substantive due process claim. *See Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999). Even taking these allegations at face value, Webb's situation is too vague to apply this theory. Because it does not create an issue of fact that Defendants' conduct is responsible for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Burnsworth v. PC Lab.*, 364 F.App'x 772, 775 (3d Cir. 2010) (unpublished).

Webb's brief also states that "his custody of the minor child was limited, removed, denied and suspended by the CYS and other defendants."[110] This allegation, too, appears out of thin air—no citation is provided, and Webb himself does not even testify to it.

Finally, Webb's deposition testimony reflects his complaint that continuing to carry out the drug tests despite his positive results violates his rights. The burden on Webb's parental rights here is unclear at best. Rather than revoking custody of C.P., all CYS did was impose conditions of supervision upon Webb's care of C.P., which included his drug tests. "The right to family integrity clearly does not include a constitutional right to be free from child abuse investigations."[111] The right to family integrity then almost certainly does not extend to a right to be free from drug testing, which poses a far more attenuated burden, if any burden at all, upon parental rights.[112] Nor could any reasonable jury infer negligence, and certainly not gross negligence, from the drug test requirements.[113]

---

[110] Doc. 27 at 3.

[111] *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993) (citing *Stanley v. Illinois*, 405 U.S. 645, 745 (1972)); *Croft*, 103 F.3d at 1125 (citing *Watterson* for this proposition).

[112] Nor does Webb alert the Court to any case stating the contrary, or indeed any examples from case law at all.

[113] CYS initially revoked custody from C.P.'s mother because of her drug use, and subsequently awarded custody to Webb after he was released from prison for selling crack cocaine and heroin from his residence, despite confidential reports suggested that he may have been using drugs. Under these conditions, awarding custody with the court-approved condition of drug testing, even when the drug testing is prolonged for two years, is not only a far cry from conscience-shocking; it is generous.

As to the right of travel, being charged with a crime "necessarily qualif[ies] [the] right" to interstate travel.[114]   This Court addressed the right to travel in its previous Memorandum Opinion. Little has changed regarding Webb's amended complaint, so I reproduce my analysis at length:

> Parolees "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [parole] restrictions.'" Therefore, "despite the fundamental nature of this right [to interstate travel], there nonetheless are situations in which a State may prevent a citizen from leaving. Most obvious is the case in which a person has been convicted of a crime." Typically, violations of the right to travel are charged against the State or the United States, or the State or federal agency supervising the parolee . . . . Webb has not sued the Board or the Columbia County agency responsible for his supervision. Nor has he alleged that Defendants had any control or influence over the Board's or the county agency's actions. His allegation that the Board acted as a result of Defendants' communications to the Board about his drug use is conclusory at best. Even if Defendants had sufficient influence to cause the Board to restrict Webb's out-of-state travel, the restriction is justified. The Court notes that Webb was convicted of manufacture or possession of controlled substances and conspiracy to flee apprehension, among other crimes. His 2015 flight conviction alone serves to show that the Board's restriction on his out-of-state travel [does] not violate his limited right to travel.[115]

On this record and with Defendants' SOF deemed admitted, little has changed. The record shows that CYS required Webb to inform it of his change of address when he traveled. It does not reflect that CYS restricted his right of travel in any way. Regardless, Webb's allegations remain vague as to what influence CYS

---

[114] *Jones v. Helms*, 452 U.S. 412, 420-21 (1981).
[115] Doc. 11 at 9.

exercised over the Parole Board, he does not know what was communicated to his parole officer or by whom,[116] and any right to travel claim is likely meritless for the same reason.[117]

## III.    CONCLUSION

Making a record is much more than making allegations. It requires lawyers to diligently lay the groundwork for each claim to be supported by evidence. To ensure that only cases premised upon reliable evidence proceed to trial, this price must be paid for allegations to become facts. Here, the undisputed facts establish no involvement by any defendant in Webb's alleged constitutional injuries, nor do they establish any injury at all. Accordingly, neither of Webb's claims survive, and Defendants' motion for summary judgment is granted in full.

---

[116]  Webb allegedly received a text message from his probation officer explaining that because of what a CYS caseworker had told the probation officer, Webb was not allowed to travel. Doc. 24-1 at 8, 12, Webb Deposition at 26, 44. Webb further alleges that the information contained some misrepresentation or omitted some information. But he is "not sure" what that misrepresentation or omission is; his probation officer allegedly "wouldn't tell [him] all the details" aside from the fact that he "wasn't cooperating." *Id.* Webb may later testify that the lie was that he faked his drug tests; it is not clear from the deposition whether this lie was what resulted in the travel restriction, or whether it was something else. *Id.* at 8, 10, Webb Deposition at 28, 37. Nor does Webb know who at CYS contacted the probation officer. *Id.* at 13, Webb Deposition at 46.

[117]  Since this Court's last memorandum opinion, an additional, unpublished opinion from our Court of Appeals also rejected a similar right to travel claim by a parolee. *See United States v. Fattah*, No. 23-2396, 2023 U.S. App. LEXIS 24767, at *2 (3d Cir. Sep. 19, 2023) (per curiam).

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge